CANADY, J.,
dissenting.
Because I conclude that the failure of the police to initiate the process for securing a search warrant did not preclude application of the inevitable discovery doctrine, I .would approve the decision on review. I would disapprove the decision in Rowell v. State, 83 So.3d 990 (Fla. 4th DCA 2012), to the extent that it adopted a categorical rule,; also adopted by the majority here, that pursuit of a search.warrant is prerequisite to application of the inevitable discovery doctrine when the existence of probable cause justifying issuance of a search warrant is the basis asserted for the application of the doctrine. This categorical limitation on the inevitable discovery doctrine is inconsistent with the deterrent purpose of the exclusionary rule.
In Nix v. Williams, 467 U.S. 431, 447, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), in adopting the inevitable discovery exception to the exclusionary rule, the Supreme Court concluded that suppression of evidence is unwarranted “if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police.” Justifying that conclusion, the Court observed that “there is no rational basis to keep [such] evidence from- the jury in order to ensure the fairness of the trial proceedings.” Id. The Court further observed that suppression of such evidence “would do nothing whatever to promote the integrity of the trial process, but would inflict a wholly unacceptable burden on the administration of criminal justice.” Id. But the major focus of the Court’s justification of the inevitable discovery rule was based on its analysis of the deterrent purpose of the exclusionary rule.
The underlying principle is this: “the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred.” Id. at 443, 104 S.Ct. 2501. The deterrent purpose of the exclusionary rule generally is served if the police will gain no advantage by virtue of unconstitutional conduct and thus have no incentive to engage in that conduct. The Court reasoned that the inevitable discovery rule is consistent with the deterrent purpose of the exclusionary rule because “when an officer is aware that .the evidence will inevitably be discovered, he will try to avoid engaging in any questionable practice” since “there will *851 be little to gain from taking any dubious ‘shortcuts’ to obtain the evidence.” Id. at 445-46, 104 S.Ct. 2501. The Court also noted that “[significant disincentives to obtaining evidence illegally — including the possibility of departmental discipline and civil liability — also lessen the likelihood that the ultimate or inevitable discovery exception will promote police misconduct.” Id. at 446, 104 S.Ct. 2501. Given all these circumstances, the Court rejected the argument that the inevitable discovery rule should include a requirement that the government prove an absence of bad faith.
In applying the inevitable discovery rule, we have held that evidence discovered by the police based on a constitutional violation is not subject to suppression if the evidence “would have been found independently ... by means of normal investigative measures that inevitably would have been set in motion as a matter of routine police procedure.” Craig v. State, 510 So.2d 857, 863 (Fla.1987). The facts presented by the case on review fall squarely under that principle of law. Based on the record before us, it is undeniable that — as the trial court found — if the police had not acted on the constitutionally infirm consent to search, they would have proceeded to obtain a search warrant based on the information provided to them by the bondsmen. Only a flight of fancy could lead to a contrary conclusion.
In this case, we need not decide whether the inevitable discovery rule can be applied to the warrantless search of a dwelling conducted without any colorable legal basis. And to conclude that suppression is unjustified in this case, we need not adopt a rule that suppression will never be available for evidence obtained in the war-rantless search of a dwelling if the police had probable cause justifying the issuance of a search warrant that would have led to the discovery of that evidence. It might be argued that such a broad rule would inevitably produce a perverse incentive to deliberately erode the requirement for obtaining a warrant. In any event, resolution of this case requires only that we recognize that suppression of the evidence here — where the police acted on the basis of consent to search that was determined to be invalid — would be inconsistent with the purpose of the exclusionary rule.
As the Supreme Court explained in Herring v. United States, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009):
To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.
The “bottom-line effect” of the exclusionary rule
in many cases, is to suppress the truth and set the criminal loose in the community without punishment. [The case law holds] that society must swallow this bitter pill when necessary, but only as a “last resort.” For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.
Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 2427, 180 L.Ed.2d 285 (2011) (quoting Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006)) (internal citations omitted). This understanding of the exclusionary rule strongly cuts against the cramped reading of the inevitable discovery exception adopted by the majority.
The record here supports the conclusion that the conduct of the police was neither deliberate, reckless, nor grossly negligent. The police acted on the basis of a consent *852 to search, which was determined to be invalid based on the circumstances in which the consent was requested by the police — circumstances involving the presence of several armed police officers, including an officer wearing a mask. There is no suggestion in the record of any threats or physical coercion. Nor is there any suggestion that the police understood the consent they obtained to be invalid. The mistake made by the police in this case does not justify the cost that is imposed by the suppression of the evidence— evidence which would readily have been available to the police through routine measures leading to the issuance of a search warrant.
“The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.” Nix, 467 U.S. at 443 n. 4, 104 S.Ct. 2501. That purpose is thwarted by the decision in this ease. The conduct of the police here was neither “sufficiently deliberate” nor “sufficiently culpable” to justify the “bitter pill” of “setting the criminal loose in the community without punishment.” I dissent.
QUINCE and POLSTON, JJ., concur.